Thomas Rosenberg and Eleanor Rosenberg v. Commissioner.
Rosenberg v. Commissioner
Docket No. 48723.
United States Tax Court
T.C. Memo 1956-68; 1956 Tax Ct. Memo LEXIS 225; 15 T.C.M. (CCH) 320; T.C.M. (RIA) 56068; March 22, 1956
*225 Thomas Rosenberg, Esq., 454 Belmont Avenue, Chicago, Ill., for the petitioners. Edward L. Newberger, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against petitioners in the amount of $3,069.94 for the year 1949. The only question for decision is whether legal fees received by Thomas Rosenberg in 1949, under contingent fee contracts, are reportable as income where it developed that the lower state court decree in 1948, which led to the payment of such fees, was reversed in 1949 by the highest court of the state. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners are husband and wife, and are residents of Chicago, Illinois. They filed a joint income tax return for the taxable year 1949 with the collector of internal revenue for the first district of Illinois. They kept their books and records and filed their return for the year in question on the cash basis. Thomas Resenberg, hereafter referred to as petitioner, is an attorney at law duly licensed and admitted to practice in the state of Illinois. At all times material *226 herein there was in full force and effect in the state of Illinois a revenue measure known as the Retailers' Occupation Tax whereby persons engaged in the sale of goods, wares or merchandise at retail were subject to a tax measured by a percentage of the gross receipts of such business. A dispute arose between persons in the business commonly known as cabarets or night clubs and the state of Illinois as to whether or not the gross receipts of a night club, cabaret or entertainment business were properly subject to the Retailers' Occupation Tax Act. It was the contention of the persons in those businesses that the receipts were not subject to the tax, commonly known as the sales tax, because of the fact that their gross receipts were received primarily by virtue of intangibles, rather than tangible personal property. The procedure in Illinois for testing the applicability of any taxing measure or revenue measure as it applies to any person or class of persons is generally to pay, under protest, the tax claimed by the state and to bring injunction proceedings in a proper court of the state to receive a judicial determination as to the applicability of the taxing measure or revenue *227 law. Such funds so paid under protest are held separate and apart by the state treasurer until final determination by the court. Certain persons engaged in the cabaret, night club or entertainment business desired to contest the determination by the state taxing authorities that their gross receipts were subject to the so-called sales tax act and to this end, retained petitioner and his associate, Milton Raynor, who is also an attorney at law duly licensed and admitted to practice in Illinois. Petitioner and Raynor had been attorneys for a local association of night club operators, the Cafe Owners Association. Petitioner and his associate were retained by certain persons on a contingent fee basis. The following is an example of the contract they executed with the various clients: "CONTRACT "In consideration of services rendered and to be rendered, and other good and valuable considerations the undersigned hereby employs RAYNOR and ROSENBERG to represent the undersigned in connection with obtaining a change of rule exempting Cafes and Theatre Restaurants from the present Retailers' Occupation Tax of Illinois. "The undersigned agrees to pay for said services, fifty (50%) per *228 cent of all rebates or refunds that may be obtained from the Department of Revenue of the State of Illinois, or from the Treasurer of the State of Illinois, should said Occupation Tax be held to be inapplicable to the undersigned. * * *
"IN WITNESS WHEREOF, the undersigned has hereunto set his/its hand and seal this 15th day of May 1945. "Howard Silhouelte Club, Inc. "Jack Terman Pres." In one case the fee was fixed at 33 1/3 per cent of the recovery. Petitioner and Raynor engaged the services of Michael Phillips as co-counsel to assist them in the matter concerning the taxability of gross receipts of their clients. In agreeing to act as co-counsel, Phillips agreed that in the event the attorneys succeeded in their endeavor, he would accept as his compensation for services rendered a sum equivalent to 22 per cent of the total amount of the refund procured for the clients. Phillips is also an attorney at law duly licensed and admitted to practice in Illinois. After their clients paid, under protest, the tax demanded by the state a proceeding was brought in the Circuit Court of Cook County, Illinois, by petitioner and his associates to test the determination of the state *229 taxing authorities that the clients were subject to the Retailers' Occupation Tax Act. The proceeding was instituted on November 14, 1945, and was entitled "Byron Massell-Moe Henry Weiss, doing business as 51 Hundred Club, a limited partnership, et al., Plaintiffs, v. Paul C. Rosenquist, as Acting Director of Revenue of the Department of Revenue of the State of Illinois, Richard Yates Rowe as State Treasurer of the State of Illinois, and George F. Barrett, Attorney General of the State of Illinois, defendants, No. 45 C 9061," later known as Massell v. Daley in the Supreme Court of Illinois. From time to time proceedings were held in the matter in the circuit court and the clients continued to pay the tax under protest. On December 1, 1948, the circuit court entered a decree holding the plaintiffs were not subject to the taxes imposed by the act. On December 20, 1948, in accordance with the decree, the circuit court entered a supplemental decree ordering the defendants to make certain specific refunds to the plaintiffs from the funds which had been accumulated under the temporary injunction. At that time the assistant attorney general checked the supplemental decree and wrote *230 thereon, "Checked and found correct by Oliver Bovik, Ass't Atty. Gen'l." Subsequently, on December 29, 1948, the treasurer of the state of Illinois issued negotiable warrants payable to the plaintiffs for the purpose of effecting the refund of the moneys paid by them under protest. Moneys in connection with the above litigation were received by petitioner in December 1948, and in January 1949. The amount of such moneys received in 1949 was $16,133.97. Petitioner deposited the moneys in his bank account, along with his other funds, and has used the same bank account all the time. He has expended the litigation moneys from time to time for various personal and business uses. There has been no restriction on the use of his funds. On January 21, 1949, after there had been a change of the state administration, the state filed an appeal from the decree of the circuit court. The appeal was accepted by the Supreme Court of Illinois and arguments were heard thereon. In the meantime, the state had been permitted by the supreme court to take an appeal from a similar decree of the same circuit court in Roth, Inc. v. Daley, in which the plaintiffs were in similar businesses as were those in *231 the Massell case, but they were not clients of petitioner. Because both cases involved similar questions of law and similar facts, they were consolidated by the supreme court for consideration and opinion. On November 21, 1949, the Illinois Supreme Court reversed the decrees of the lower court, and did not remand the cause for further proceedings. Rehearing was denied on January 12, 1950, and the case is reported as . In its opinion, the supreme court made the following statement: "It is, therefore, the opinion of this court that the decrees appealed from in the cases at bar had the effect of exempting and foregiving these plaintiffs from liability for taxes and, therefore, that the decrees are invalid and should be reversed. The question of the right to recover the amounts provided in said decrees is not before the court and we express no opinion thereon." Subsequent to the Illinois Supreme Court's decision, the People of the State of Illinois brought two separate actions, one against the taxpayers in the Roth case and the other against those in the Massell case, seeking in each action to recover back the *232 sums that had been respectively refunded. The action against the Massell taxpayers was filed on January 23, 1950, in the Circuit Court of Cook County at Docket No. 50 C 598. However, the Roth case reached the supreme court first by an appeal of the People of the State of Illinois from a judgment for the defendants. The supreme court held the defendants were severally liable, and further explained its decision and opinion in the Massell case, supra. This Roth case was decided in November 1951, and is knonn as . The Circuit Court of Cook County in People of the State of Illinois v. Byron Massell, et al., Docket No. 50 C 598, entered a judgment in favor of the state on May 5, 1953. Only one defendant appealed to the Illinois Supreme Court from this judgment. On that appeal, the supreme court on March 17, 1954, affirmed the judgment and award of the lower court. In its opinion, the supreme court stated: "Identical contentions were made and rejected in , and it is unnecessary to consider them again here. With regard to the contention that the decree in Massell *233 v. Daley was not void but merely erroneous, we said: 'when we held that the decree was "invalid," we held in clear and unmistakable language that the decree was void. If this court had meant "erroneous," as contended by the defendants, we would have so stated. There could be no plainer language than to say that the decree was entered by consent and did not constitute a judicial determination of the rights of the parties. If the purported decree did not constitute a judicial determination, then, obviously, it was not merely erroneous but was actually void.' This langauage is equally applicable to the contention in the case at bar Since the holding in Massell v. Daley applied to both decrees there involved, the same result must follow here. No purpose can be served by discussing questions we have already twice considered." In January 1949, at about the time the state appealed the Massell case, supra, another suit was filed against the state, called Hilton Hotel v. The State of Illinois, which included new clients and practically the same clients who instituted the Massell action. The Hilton Hotel case is still pending in the Circuit Court of Cook County. Subsequent to the Illinois *234 Supreme Court's decision in the Massell case, in November 1949, some of the clients had called on petitioner and his associates for reimbursements and counsel advised them that if they had to return the money they would do so. Petitioner's clients agreed to wait until the outcome of the Hilton Hotel case before pressing petitioner for return of the fees he had received under the respective contingent fee contracts prior to the appeal and reversal of the Massell case. No portion of the fees has been repaid. Petitioner reported the fees he received in 1948 as income on his Federal income tax return for 1948, but he did not report the $16,133.97 of such fees he received in 1949. Respondent in determining the deficiency herein included the amount in petitioner's income for 1949. Opinion The precise question presented here was considered and decided in Michael Phillips, 25 T.C. - (filed January 17, 1956) [Dec. 21,516], and for the reasons stated in our opinion in that case, we conclude and hold that the respondent did not err in his determination of deficiency in this case. Decision will be entered for the respondent.